All right, I'll now call the case of the United States v. Marletta Knowles. All right, I'll now call the case of the United States v. Marletta Knowles. Good morning. Good morning, Your Honor. May it please the Court, Tim Cohn on behalf of the defendant Marletta Knowles. Oh, I'm sorry. Marletta. I said Marietta. In United States v. Pierce, this court state of case that is cited in our brief, this court noted that other circuits have recognized the danger of unfair prejudice that arises when the source of identification testimony under Rule 701 is a police probation or parole officer. And in Pierce, the court went on to note that the appellate courts have discouraged the use of lay opinion identification by policemen and parole officers unless such persons are the only source of adequate identification testimony. And in Pierce, this court added, we share this concern and likewise caution trial courts to admit this kind of identification testimony only in limited and necessary circumstances with all appropriate safeguards. In this case, the district court decided to not exercise the caution that Pierce instructed and to allow a law enforcement agent to testify and give his lay opinion testimony under Rule 701 that the person that was shown on five Publix videos based on his frame-by-frame analysis was the same person that he had seen 20 to 30 minutes when he arrested Marletta Knowles. And this was over strong defense objection, by strong I mean before trial and during trial. Then . . . Can I ask you, I'm sorry, I know you've got things you want to say, but it looked . . . I mean, in my view of all this, it seemed like to me that if the district court had applied the rule in exactly the same way to your expert and the government's expert, they either would have both been in or both been out. So I'm sympathetic to what you're talking about this morning. But what the government says in response is, well, you know, Ms. Knowles got ID witnesses anyway, and so there wasn't any prejudice. Can you direct your remarks to that at least when the time comes? Sure, Your Honor, and I'm happy to do so. Now, the two witnesses that Your Honor is referring to were two coworkers of the defendant at the funeral home. And as the prosecutor pointed out in his closing argument, they were first friendly with the defendant, and he urged the jury, understandably, to discount their testimony that it was not Marletta Knowles on the public's videos because they had a prior relationship with her. And he urged the jury not to credit their testimony because their alibi testimony had been, in part, successfully impeached by showing contradictions. And what the defense expert, who was not allowed to testify, and I refer to him as a defense expert, but I really should refer to him as a defense investigator whose lay opinion testimony was not permitted. He would have been, like the law enforcement agent that the government put on, an objective witness, one who had no prior connection to the defendant, had no stake in the case, and simply looked at the public's videos, met the defendant, took photographs of her, spent two hours with her, and reached an opinion that this was not the person on the public's videos. So this would have been important evidence both to rebut the government's witness and to corroborate the defense witness. So it would have been an extremely important piece for the defense to put on, a vital piece. Just a follow-up. Agent Tippins, as I understand it, was the only witness to put your client in the public's. Is that right? That's correct, Your Honor. Okay. That's correct. Tippins was going to testify. Had he not testified regarding I.D., he still had to recount the arrest, had he not? He still was able to lawfully do that. That's correct, Your Honor. The status as a law officer was going to come out one way or another. That's right, Judge. He would have – the government called him to testify about the arrest and the incriminating statements that were made during the arrest and the documents that were found during the arrest. So that's correct. So I'm not sure why there's any incremental prejudice. He is also testifying as to identification. Well, now he's giving lay opinion testimony. The first part, the answer I just gave you, he's saying this is what I – Let's assume that that was an error. What harm? What harm? Yeah, let's go to that. What harm? Well, it's the – for that question, I would direct the court to the closing argument of the prosecutor who went through in his closing argument to the jury every single Publix video one by one and as to each one noted, Agent Tippins told you that he did a frame-by-frame analysis, looked at that picture. And remember, Agent Tippins was the one who stood next to her for almost 20 to 30 minutes at the stop. So relying on that knowledge and relying on the pictures that were available to him, he determined that that was Ms. Knowles. And if you recall, when he was on the stand, we went through each of these videos. The government asked, who's in those videos? And Agent Tippins said, the defendant, Ms. Knowles, without equivocation. So – and then I could go on, Judge. He goes through this video by video, the prosecutor does, and concludes, so as to count one, based on those facts, based on the video of Ms. Knowles, based on Agent Tippins' observation of Ms. Knowles, and based on known photos. So he's relying on this very testimony that should have been excluded, our brief argues, as the very basis. He also notes the possession of the money orders that she didn't disclaim and also the statement that they had been paid for with cash. But in his summary of the basis for this conviction, the testimony of Agent Knowles, the Rule 701 testimony, is expressly included by the prosecutor. And this is – the count one, incidentally, is a predicate for count two, aggravated identity theft. So it's the core of the government's case. And Ms. Knowles had, what, two witnesses to the contrary? Yes, that's correct, Your Honor. A co-worker, I think, and someone else? Two co-workers. Two co-workers, okay. I don't have much to add to this, so unless the Court has further questions, I will save my time for rebuttal. Thank you. All right, thank you. May it please the Court, Assistant United States Attorney Carol Herman on behalf of the United States. This whole case devolves the issues raised on appeal on an abuse of discretion standard. And abuse of discretion doesn't mean that this Court would have decided the issue the same way. It only means that the District Court apply an erroneous legal standard or base its ruling on clearly erroneous facts, and the District Court did neither of these in this case. As far as Agent Tippins identifying Ms. Knowles as the person in the public's video, as I pointed out in the brief, this is sort of a swearing contest because Agent Knowles says that's her in the videos, and then two of her co-workers testify in the defense case that's absolutely not her in the videos. The jury is given the videos with a laptop to view them on during deliberations, as well as having viewed the videos themselves during trial when they were admitted and played. The jury also had nothing to do for the three days of trial except look at Ms. Knowles and make their own identification. And I'll point out that the District Court . . . It took them a while to decide the case, though, didn't it? Excuse me? It took them a little while to decide the case, didn't it? Yes, it did. And I just want to confirm with you, Agent Tippins was the only witness presented by the government that put Ms. Knowles in the public's. Is that right? That's correct. But even without the public's video, there was enough evidence to convict . . . Even without, let me put it this way, with Agent Knowles' identification testimony . . . Well, if she . . . I mean, this is a question, but if she was found not guilty of Count 1, then the rest of it falls as well, right? Right. It has to be . . . Okay. . . . during the use of an unauthorized access device . . . Right. . . . that she committed the aggravated . . . an underlying felony, the aggravated . . . I mean, so you needed Agent Tippins' testimony to make your case on Count 1 . . . So . . . I really don't think so, because she's charged in Count 1 with use or trafficking in one or more unauthorized access devices. She has with her in the car the money orders from Publix and receipts . . . But she says they're just in the car. I wasn't in Publix and . . . She did not say that. Well, I mean . . . She didn't testify at trial. Well . . . Okay. When I say the government says, I mean the government's lawyer, and when I say she says, I mean . . . But . . . So, I mean, I . . . You know, if we've got to talk about prejudice, the government's case was very much dependent upon that being her in Publix, right? Not necessarily, because she could be found guilty of use or trafficking in one or more unauthorized access devices based on . . . Just because of what was in the car. In the car, that she said, we purchased with cash. She made the false statement, meaning herself and her boyfriend, who was driving the car, had purchased the money orders with cash. The receipts for the money orders are in the car as well, at least some of the receipts. And, they have the Publix information on them. And, Agent Tippins immediately called Publix while they're . . . during the roadside stop and say, were these money orders purchased with cash? And, whoever the Publix person said no, they were purchased with a credit card or debit card. So, that's the first information to show, you know, that she had these money orders that resulted from a purchase. And, then they went and got the Publix records. And, the Publix records custodian testified and so on. So, this case could have been proven without the video even, because you had her statement by the side of the road. You had her in possession of the money orders. And, then you had the tracing of the money orders and the receipts to the various Publix. So, you say, I mean, even if she wasn't the person in Publix, you still had evidence to prove the elements of fraudulent use of a debit card? I think so, because she said they were to pay for my birthday party at the signature grand. They got the records from the signature grand to show that a payment had been made and what was owed on it and the dates they were owed. There was enough, at least circumstantially, to put this together. And, the other thing is the victims whose identities had been purloined testified. And, then the representatives from those credit card companies testified. None of them knew Ms. Knowles. Well, it's connected to Ms. Knowles, because she has the fruits of the crime. She has the money orders with her. Right, but they don't know her. I'm repeating myself now. The only person that ties her to Publix is your agent that arrested her, Agent Tippins. The only person that ties her to the woman in the Publix video, yes. But, she was identified in court as the woman in the car by both Agent Tippins and Detective Katelyn. Ms. Herman, was there, do you think, a basis for treating the defense witness on identification who was excluded differently from the agent? Yes, the basis is if the defense witness had been permitted to testify, the most Mr. Wyman, who was not an investigator, by the way, he was just someone who was retained by the defense in the hopes that he would make the grade and be an expert with photogometry, and he didn't. So, he was disqualified as an expert after a Daubert hearing. If he were permitted to testify as a lay witness, the most he could have said is, I spent some time out of nowhere with Ms. Knowles. I took some photographs of her. I looked at the Publix video, and I don't believe it's her. How is that different from what the agent testified to? I spent some time with Ms. Knowles. I looked at the video, and I think it's her. On cross-examination, the prosecutor's going to ask, how is it you came to meet Ms. Knowles? Why does that matter? How does it matter? I think it undermines the effectiveness of his testimony by saying he was paid to be an expert. He didn't make it as an expert, so now he's coming forward with this. Right, and the government had even called, could have impeached him. But if you're allowing an agent to testify about identification on a video based upon having spent 20 to 30 minutes with a person, a subject, that's no different than allowing someone who's been paid to do the exact same thing to testify based on perception, right? I don't think it's the same thing. What's different about it? Of course, what Agent Tippins did as well is he took the other photographs from public sources, such as the Department of Motor Vehicles and also the arrest photo from the Marshals Service, and looked at those photos, which would have come in as business records also, Ms. Knowles, and said, I also looked at those before I made my determination that that is the woman in the public's video. So that might make his testimony stronger, more persuasive, more compelling, but it doesn't explain why the defense witness was excluded as a lay witness. I think he was excluded. The district court did not. Could the district court have allowed the defense witness to testify and excluded the government agent from testifying on identification? The district court did not make findings. I think after the Daubert hearing, the district court had had enough of Mr. Wyman, and that was the end of his appearance in court. But even without Mr. Wyman, I still don't see how Ms. Knowles was prejudiced. I know. That's a very different issue, and you've made strong arguments about why she shouldn't prevail at the end of the day. But my question is an antecedent one, and I'm trying to figure out if there is a basis, even under an abusive discretion standard, for treating those two witnesses separately. The government certainly wouldn't have been happy had the district court said, no, Mr. Wyman, you can testify as a lay witness, but Agent Tippins, you cannot on identification and only allow the defense to have identification testimony. That wouldn't have been appropriate, right? It's not a matter of appropriate. It's a matter of abuse of discretion. Did the court have a reason for limiting or excluding Mr. Wyman? I mean, I'm going to say that. As an expert, I don't disagree with you, but we're talking about lay witness. She could have had other lay witnesses. She could have had her mother come. She could have had her seven siblings come. But the district court doesn't get to decide who testifies. I know who the witnesses are. I know that, but I'm saying it wasn't that Ms. Knowles was left without recourse or that her defense was prejudiced, and that's the bottom line, was her defense prejudiced. No, because she also had the dual defense. I was at work. It couldn't have been me on the public's videos, because I was at work those days. So here we are in a swearing contest, whether it was Ms. Knowles in the videos or it wasn't. And at the end of the day, it really doesn't make a difference, because she had the fruits of the crime with her. She made a false statement about them, that they were purchased with cash, which the records show they were not purchased with cash. She told the purpose of what these things were for. I mean, the jury could decide. They had the video. They looked at her for three days. There was an in-court identification that she was the woman in the car with these money orders and receipts and $1,000 cash when she's making $8.50 an hour at the funeral home. And there was enough evidence to convict her. And the district court gave a very good jury instruction about how the jury was to evaluate identification testimony. And I would urge the court to look at that. It's on a DE Docket Entry 128, pages 170 to 172. First, the district court starts out by telling the jury how to evaluate any witness's testimony. Except for the witnesses they didn't hear, right? Well, also how to evaluate the identification testimony and the caution with which they should consider it. So on this record, with the totality of the evidence and the jury instructions and what the defense argued in closing as well as that, which, again, isn't evidence, certainly there was a basis for the jury to convict Ms. Knowles and no abuse of discretion occurred. Ms. Herman? I have no other questions. Yes, I have a question. Was there anyone else other than the officer, either any specific individual or generically any type of person that the government could have produced for identification testimony? Well, I suppose, you know, this isn't... This is money orders purchased with purloined information. I think we're imbuing the Publix video with too much importance, but the government, I suppose, could have retained an actual expert in photogrammetry who could have done the analysis that Mr. Wyman was unable to do  and analyze the facial planes of Ms. Knowles' face and so on. Any other lay... Isn't that correct? Any potential lay witness? No, that would have been an expert opinion. I understand that. I don't know if there's any other lay opinion you could have gotten because it would have had to have other people. You know, we're in a little bit of a quandary here. This isn't the biggest case in the world where the government's going to go out. It probably is to Ms. Knowles. Yes, it is to Ms. Knowles, but Ms. Knowles should have thought about that before she decided to go use stolen money orders or money orders purchased with other people's information to plan a deluxe birthday blowout for herself. So there's no sympathy factor there. Apparently not. But Ms. Knowles got a very fair trial, and the district court did devote attention to the issue and made a decision that maybe this court would not have made, but that still doesn't go to enough to show... But you were urging the district court to make that decision. Yes, the prosecutor urged the district court to exclude him as a lay witness. That's what this case comes down to, but there's certainly sufficient evidence to convict her aside from Agent Tippins' identification of her in the Publix video, which the district court made clear also in its closing charge to the jury. They're the deciders who get to determine if that is Ms. Knowles in the video. Thank you. I'd like to address two points. The first is to make sure that the court is reminded, if need be, that the Count II 1028A aggravated identity theft claims had as an essential element the conviction under 1029. I imagine there's enough case law going through this circuit that I don't need to make that point on those statutes, but it is an essential element. I would add, perhaps too much detail, that I believe it's true that even if the jury acquits on the 1028A claims, on the 1029 Count I, it could have an inconsistent verdict and convict on 1028A, and that might not be a problem. But the jury is specifically instructed that 1029, and I'm sorry if I've confused you by adding that, but that 1029 is an essential element of the 1028 Count II, III, IV, V counts. So I just want to make that point very clear. Mr. Cohn, Ms. Herman says in part that the testimony concerning the ID on the public's videos was relevant and important, but not necessary given the other evidence, for example, found in her car and some of the statements that she made to the agent. So her argument essentially comes down to, if there was error, it was harmless error. Why is she wrong about that? Well, I've emphasized before the turn to the prosecutor's closing argument and see what he thought was important, and I think that's revealing. I also would pick up on Judge Martin's observation that the jury here deliberated for a day and a half after a two-day trial, and the natural inference is that those statements that you just referred to, Judge Jordan, and the money orders that were found in the console of the car, if that had been enough, we wouldn't be deliberating for a day and a half. Chances are the jury was deliberating, is that really the person in the public's video that we saw for three days here in the courtroom, and that's really what the question boiled down to, and the scales on that vital question, the scales of justice, were tilted, as your questions earlier suggested, in the government's favor, because the Rule 701 expert testified for one party and not for the other. Can I just... I'm just curious about the record and this, because on the appeal, we have a kind of limited view of what went on. So there's an officer from the Department of Labor that's in the car when they stop this particular... I mean, that's with the law enforcement officer when they stop this particular car, and the assignment for the Department of Labor agent is identity theft, and they stop this car and find a fairly obscurely hidden evidence of identity theft. Is that just coincidence, or do you know what the background is on that? I don't know, Your Honor. I really don't know. I have to say, I mean, I just don't know. Okay. I don't either. I was wondering. Maybe I should have asked Ms. Herman. Thank you. Thank you, Your Honor. Thank you.